[995 NYS2d 559]

The People of the State of New York, Respondent, v Christian Williams, Appellant.

First Department, October 30, 2014

**APPEARANCES OF COUNSEL**

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Anita Aboagye-Agyeman* and *Alexandra Keeling* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Beth Fisch Cohen* of counsel), for respondent.

**OPINION OF THE COURT**

Renwick, J.

The principal question presented here is whether a judgment of conviction, entered upon a guilty plea to a particular crime,

may stand when the record discloses that neither the court nor the parties realized that the agreed upon sentence, to be imposed if defendant complied with the conditions of the plea, was illegal. Although defendant violated the conditions of his plea, and the enhanced sentence was legal, defendant is entitled to a plea vacatur for two fundamental reasons. First, defendant's constitutional claim that his plea violated due process because it was induced by an illegal promise need not be preserved. Second, to accept a guilty plea induced by an illegal promise affects the fairness, integrity and public reputation of judicial proceedings as the defendant could not have had a full understanding of what the plea connotes and its consequences (*People v Harris*, 61 NY2d 9, 19 [1983]; *Boykin v Alabama*, 395 US 238, 244 [1969]) or "[exercised] a voluntary and intelligent choice among the alternative courses of action open to the defendant" (*North Carolina v Alford*, 400 US 25, 31 [1970], citing *Boykin v Alabama*, 395 US 238, 244 [1969]).

The genesis of this case is defendant's arrest on January 7, 2010, for allegedly selling drugs to an undercover police officer. On November 1, 2011, defendant entered into a plea agreement that required him to plead guilty to the top count of the indictment, criminal sale of a controlled substance in the third degree, a class B felony. In exchange, the trial court promised to sentence defendant to a definite term of imprisonment of three years and two years of postrelease supervision (PRS). In addition, as part of the plea agreement, the trial court permitted defendant to remain at liberty pending sentence. This was done with the understanding that defendant's sentence could be enhanced to a maximum prison term of 12 years, at the discretion of the sentencing court, if he failed to return to court for sentencing, failed to cooperate with the Department of Probation, or committed a crime.

As indicated, neither the trial court nor the parties realized that the agreed upon sentence, to be imposed if defendant complied with the conditions of the plea, was illegal. Specifically, defendant had previously been convicted of attempted criminal possession of a weapon in the first degree and adjudicated a predicate violent felony offender (*see* Penal Law §§ 110.00, 265.03 [3]; 70.02 [1] [c]). Under the circumstances, the correct incarceratory sentence range, for the crime to which defendant pleaded guilty, was from a minimum of six years to a maximum of 15 years (*see* Penal Law § 70.70 [4] [b] [i]).

After his plea, but prior to his sentence in this case, defendant was arrested in an unrelated matter. Soon thereafter, on November 17, 2011, the trial court held an *Outley*[1] hearing to determine whether defendant had violated the plea conditions. At the hearing, a police officer testified that he arrested defendant after observing him smoking marihuana with two other men while inside a public housing building. The District Attorney's Office, however, declined to prosecute defendant because he was not found in possession of any marihuana. Nevertheless, finding the police officer's testimony credible, the trial court found that defendant had committed the crime of misdemeanor criminal possession of marihuana.[2] Accordingly, the trial court found defendant in violation of the plea agreement and sentenced him to six years in prison, as well as two years of PRS, which the court considered "an appropriate enhancement in view of all the things that went on related to this case."

■ On appeal, defendant seeks to vacate his plea on two grounds. First, defendant argues that the court's confusing plea conditions were not properly explained to him. Like the dissent, we find this contention devoid of merit because the record establishes that defendant was explicitly told that he must comply with certain conditions, including "not committing a crime." Second, defendant contends, and we agree, that his plea violated due process because it was secured by way of an illegal promise. It is, thus, on this issue that we depart from the dissent's position.

As the Court of Appeals recently held in *People v Johnson* (23 NY3d 973, 976 [2014]), a plea can never be knowing and voluntary when it is based "on complete confusion by all concerned." In *Johnson*, defendant pleaded guilty to rape in the second degree, which, as defined in Penal Law § 130.30 (2), is committed when a person "engages in sexual intercourse with another

---

**1.** *People v Outley* (80 NY2d 702, 713 [1993]) held that in order for a court to impose an enhanced sentence, "the mere fact of the arrest, without more, is not enough." Therefore, "[w]hen an issue is raised concerning the validity of the postplea charge or there is a denial of any involvement in the underlying crime, the court must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation" (*id.*).

**2.** It appears that the court was relying on Penal Law § 221.10 (1), which provides, in relevant part: "A person is guilty of criminal possession of marihuana in the fifth degree when he knowingly and unlawfully possesses: 1. marihuana in a public place . . . and such marihuana is . . . open to public view."

person who is incapable of consent by reason of being . . . mentally incapacitated." " 'Mentally incapacitated' means that a person is rendered temporarily incapable of appraising or controlling his conduct owing to the influence of a narcotic or intoxicating substance administered to him without his consent, or to any other act committed upon him without his consent" (Penal Law § 130.00 [6]; *Johnson* at 974-975).

In *Johnson*, however, there was "no indication in the record that this victim was incapacitated by anything other than voluntary intoxication" (*id.* at 975). Yet, both "the court and counsel believed, mistakenly, that it was necessary to put on the record facts showing that the victim was mentally incapacitated" (*id.* at 976). Morever, both the court and counsel "believed, equally mistakenly, that they had done so" (*id.*) Under these circumstances, the Court of Appeals held, it cannot be said that the plea was knowing and voluntary because "[i]t is impossible to have confidence, on a record like this, that defendant had a clear understanding of what he was doing when he entered his plea" (*id.*). Similarly here, it is difficult to understand the dissent's position that defendant's plea was knowing and voluntary when the court itself did not understand that the agreed upon sentence, to be imposed if defendant complied with the conditions of the plea, was illegal.

The dissent also erroneously concludes that defendant failed to preserve any objection to the plea agreement by failing to protest or move to vacate it. While such a challenge must ordinarily be preserved by a motion to withdraw the plea under CPL 220.60 (3), this does not apply where the trial court failed to fulfill its obligations to ensure that a plea conformed with due process (*People v Louree*, 8 NY3d 541, 545-546 [2007]). As has been well established in our law, when a criminal defendant waives the fundamental right to trial by jury and pleads guilty, due process requires that the waiver be knowing, voluntary and intelligent (*see* NY Const, art I, § 6; *People v Harris*, 61 NY2d at 19; *Boykin v Alabama*, 395 US at 244; *see also McCarthy v United States*, 394 US 459, 466 [1969] ["if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void"]).

Prior to accepting a guilty plea, therefore, a defendant must be informed of the direct consequences of the plea (*People v Ford*, 86 NY2d 397, 403 [1995]). When a court fails to so advise the defendant, the plea cannot be deemed knowing, voluntary and intelligent, and defendant may withdraw the plea and be

returned to his or her uncertain status before the negotiated bargain (*see People v Harris*, 61 NY2d 9, 17 [1983]; *People v Aleman*, 43 AD3d 756, 757 [1st Dept 2007]).

The dissent unpersuasively argues that preservation was required because the court fulfilled its duty to advise defendant of the direct consequences of his plea. The cases cited by the dissent to support its position that the court fulfilled its duty are inapposite as the dissent cannot seriously dispute that defendant's originally promised illegal sentence is a direct consequence of his plea. The dissent's attempt to blame defense counsel for the constitutional infirmity is misguided and equally unavailing. The dissent fails to explain how, by making a promise of an illegal sentence—a promise the court could not fulfill—the court fulfilled its duty to inform defendant of the direct consequences of his plea. The dissent simply ignores the fact that, when defendant entered into the plea agreement that included an illegal sentence, a material element, it was simply not possible for defendant to possess the full understanding necessary to make an informed plea. Because the improper promise was an integral part and material aspect of the agreement, the resulting plea is invalid.

The dissent finds no constitutional infirmity in a plea procured by an illegal promise because defendant's "enhanced sentence was lawful." This ignores the fact that, in its inception, the voluntary nature of the plea agreement is undermined when an agreement includes a provision for an illegal sentence. Additionally, there can be no breach of a plea agreement where the agreement itself is constitutionally defective and therefore cannot be recognized because it contains, as an integral component, an illegal promise that materially induced the defendant to plead guilty.

Indeed, the Court of Appeals has consistently held that, when a defendant enters into an involuntary guilty plea, the constitutional defect lies in the plea itself, and not in the resulting sentence (*see People v Van Deusen*, 7 NY3d 744 [2006]; *People v Catu*, 4 NY3d 242 [2005]). In other words, the prejudice resulting from a defendant entering into an involuntary guilty plea is that the "court[ ] violated the defendant's due process rights— not the defendant's sentencing expectations" (*People v Hill*, 9 NY3d 189, 193 [2007], *cert denied* 553 US 1048 [2008]). In such a scenario, vacatur of the plea is the only remedy since it returns the defendant to his status before the constitutional infirmity took place (*id.*).

Finally, contrary to the People's assertion, neither *People v Williams* (87 NY2d 1014 [1996]) nor *People v DeValle* (94 NY2d 870 [2000]) mandates a different result. In *People v Williams*, the Court held that "the trial court had the inherent power to correct an illegal sentence" over the defendant's objection where the corrected sentence fell within the range initially stated by the court (87 NY2d at 1015). There, the defendant pleaded guilty to burglary in the second degree and, at the time of the plea, "the court state[d] . . . that the defendant could receive up to 15 years in prison" (*id.*). He was originally sentenced as if he were a predicate felon to 3½ to 7 years' imprisonment, a sentence that was illegal due to his actual status as a first felony offender. On its own motion, the court corrected its error and resentenced the defendant to 3½ to 10½ years in prison, a sentence well within the defendant's bargained-for expectation "of up to 15 years," from an understood minimum of 3½ years (*id.*). Thus, *People v Williams* is not controlling here. It cannot be disputed that this case does not involve a "corrected sentence that fell within the range initially stated by the court" because here the initial range contained an illegal minimum sentence of three years, a bargained-for expectation that was no longer available.

In *DeValle*, the defendant pleaded guilty to robbery in the third degree, and on November 17, 1995, based upon his plea, the trial court sentenced the defendant to 2 to 4 years in prison, to run concurrently with an undischarged portion of an earlier sentence. By letter dated January 5, 1996, however, the Department of Correctional Services notified the trial court that Penal Law § 70.25 (2-a) required that the defendant's sentence run consecutively with his prior sentence, and the court, on its own motion, calendared the case for resentencing (94 NY2d at 871).

In *DeValle*, there was a factor not present in *Williams*, namely that in order to correct the sentence to comply with the requirements of Penal Law § 70.25 (2-a), the court would have to impose a more severe sentence than the sentence originally promised. As such, the Court of Appeals found that the *DeValle* resentence was controlled by *People v Selikoff* (35 NY2d 227, 239 [1974], *cert denied* 419 US 1122 [1975]) where the Court held that "if a court made a sentencing promise to a defendant and was unable to fulfill it, the defendant had a right to withdraw the guilty plea and to be restored to pre-plea status" (*DeValle*, 94 NY2d at 872). "At resentencing[,] [however,] defense counsel stated that the defendant wanted neither to

withdraw his plea nor to be resentenced" (*id.* at 871). Over the defendant's objection, the trial court resentenced the defendant to a consecutive term. *DeValle* upheld such resentence because the defendant "did not demonstrate on the record before [the court] that he detrimentally relied on the illegal sentence in a way that could not be rectified by restoring him to his pre-plea status if he so desired" (*id.* at 872). Thus, *DeValle* is not controlling here, where "[defendant] detrimentally relied on the illegal sentence in a way that could . . . be rectified by restoring him to his pre-plea status if he so desired" (*id.*).

In sum, in view of the evident misunderstanding by the trial court and by the parties in this matter, resulting in defendant's incomplete understanding of the implications of entering a guilty plea, the appropriate course is to permit defendant to withdraw his plea and restore the parties to their status before the plea agreement was reached.

Accordingly, the judgment of the Supreme Court, New York County (Edward J. McLaughlin, J.), rendered January 24, 2012, as amended on February 1, 2012 and February 28, 2012, convicting defendant, upon his plea of guilty, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony drug offender previously convicted of a violent felony, to a term of six years, should be reversed, on the law, the plea vacated, and the matter remanded for further proceedings.

Tom, J.P. (dissenting). In exchange for his guilty plea, defendant was promised a three-year determinate sentence followed by a two-year period of postrelease supervision with the proviso that he not commit another crime before sentence was pronounced, among other conditions. The court explicitly advised defendant that if he violated the condition, "I don't have to give you the three years with the two years. I might, but I don't have to, and I could theoretically sentence you up to 12 years." Defendant committed a subsequent crime, and the court imposed a six-year term of imprisonment. Because defendant's criminal history includes a previous violent felony conviction, the minimum sentence that could be imposed is six years, and he was subject to a maximum period of imprisonment of 15 years. Thus, the court's three-year promised sentence was an unlawful sentence.

Defendant did not move to withdraw his plea or otherwise preserve his present challenges to its voluntariness (*see People v Lopez*, 71 NY2d 662, 665 [1988]). He now contends that he was induced to plead guilty by the promise of an unlawful sentence

in violation of his due process rights (citing *People v Selikoff*, 35 NY2d 227, 238 [1974], *cert denied* 419 US 1122 [1975]; *People v Bullard*, 84 AD2d 845 [2d Dept 1981]) and that preservation is unnecessary because the promise of a sentence the court could not lawfully impose rendered his guilty plea less than knowing, voluntary and intelligent (citing *People v Hill*, 9 NY3d 189, 191 [2007], *cert denied* 553 US 1048 [2008]). Defendant's objections, which are unpreserved, should not be considered in the interest of justice. As an alternative holding, his argument is without merit and affords no basis for reversal.

A defendant generally has the right to withdraw a plea if a court makes a sentencing promise it cannot fulfill or fails to inform a defendant of a direct consequence of his plea (*see People v DeValle*, 94 NY2d 870, 872 [2000]; *People v Williams*, 87 NY2d 1014, 1015 [1996]). Counsel did not move to withdraw defendant's plea or argue, even when the final six-year sentence was imposed, that the plea had been induced by the promise of an unlawful sentence. Further, defendant does not challenge the effectiveness of counsel in failing to seek to withdraw the guilty plea (*see DeValle*, 94 NY2d at 872).

Where a defendant does not move to withdraw his plea, a sentencing court nevertheless has the inherent power to correct an illegal sentence (*DeValle*, 94 NY2d at 871-872; *Williams*, 87 NY2d at 1015; *People v Donaldson*, 117 AD3d 1467, 1468 [4th Dept 2014], *lv denied* 23 NY3d 1036 [2014]). Thus, the illegality of the promised sentence does not, in itself, render a defendant's guilty plea unknowing and involuntary. However, since the enhanced sentence was lawful, defendant's plea did not violate his due process rights. In *Williams*, the Supreme Court, sua sponte, resentenced defendant to $3\frac{1}{2}$ to $10\frac{1}{2}$ years pursuant to a guilty plea to burglary in the second degree because the sentence of $3\frac{1}{2}$ to 7 years originally imposed was unlawful. The Court of Appeals, in rejecting the defendant's double jeopardy argument stated, "That claim would be colorable only if the defendant's sentence had been increased beyond his legitimate expectations of what the final sentence should be" (*Williams*, 87 NY2d at 1015; *see also People v Collier*, 22 NY3d 429, 433-434 [2013], *cert denied* 573 US —, 134 S Ct 2730 [2014]). More specifically, in *Collier* the Court of Appeals held that

"if the originally promised sentence cannot be imposed in strict compliance with the plea agreement, the sentencing court may impose another lawful sentence that comports with the defendant's le-

gitimate expectations. Again, 'the reasonable understanding and expectations of the parties, rather than technical distinctions in semantics, control the question of whether a particular sentence imposed violates a plea agreement' " (*id.* at 434, quoting *Gammarano v United States*, 732 F2d 273, 276 [2d Cir 1984]).

Here, defendant was told that he could receive up to 12 years' imprisonment if he failed to comply with the conditions set by the court. Thus, contrary to the majority's flawed reasoning, the six-year statutory minimum sentence finally imposed after defendant violated the conditions of the plea was clearly within the legitimate expected sentencing range of up to 12 years (*Collier*, 22 NY3d at 434; *see also DeValle*, 94 NY2d at 871-872). The majority focuses exclusively on the promised sentence of three years, ignoring the conditional part of the plea agreement and the fact that defendant never moved to withdraw his plea. Since defendant violated the conditions of the plea agreement and did not move to withdraw his plea, he was no longer entitled to the three year sentence and cannot argue that the period of imprisonment finally imposed was not within the expected sentencing range of up to 12 years. Because the final sentence was lawful and within the expectations of the parties, defendant's plea did not violate his due process rights.

Defendant did not preserve his present claim by interjecting a timely protest so as to afford the trial court an opportunity to address the asserted error at a time when corrective action could be taken (CPL 220.60 [3]; *Lopez*, 71 NY2d at 666). It is the obligation of counsel to carefully review the terms of the plea and determine whether the proposed sentence legally conforms with defendant's guilty plea and predicate felony offender status to be able to adequately advise the client to accept or reject the proffered plea. Nor does this matter represent the "rare case" where preservation is not required, either because the sentencing court's attention should be immediately drawn to a discrepancy in a defendant's allocution that negates an essential element of the crime or because the court failed in its duty to advise the defendant of a direct consequence of entering a guilty plea (*People v Louree*, 8 NY3d 541, 545 [2007]). Significantly, the cases relied upon by defendant and cited by the majority involve the court's dereliction of this duty (*see Hill*, 9 NY3d at 191 [failure to advise defendant of period of postrelease supervision]; *People v Van Deusen*, 7 NY3d 744

[2006] [same]; *People v Catu*, 4 NY3d 242 [2005] [same]; *People v Gina M. M.*, 40 NY2d 595, 597 [1976] [incorrect advice regarding consequences of plea on defendant's criminal record]).

Moreover, no unlawful sentence was imposed that requires correction, because defendant failed to comply with the condition imposed by the court and the contemplated sentence was never available to him. Even if defendant had fulfilled the condition to be entitled to receive the promised sentence, it is settled that a "[d]efendant cannot rely on a promise by the court to impose a sentence which it could not lawfully impose" (*Bullard*, 84 AD2d at 845), and "[the] courts have the inherent power to remedy an illegal sentence by permitting modification to bring the sentence within the . . . sentencing range that the defendant understood would be available upon conviction" (*People v Richardson*, 100 NY2d 847, 851 [2003]).

*People v Johnson* (23 NY3d 973 [2014]), cited by the majority, is clearly distinguishable. First, the defendant preserved his objection by making a timely motion to withdraw his plea. In addition, it was not confusion over the sentence that rendered the plea less than knowing, intelligent and voluntary but confusion over the crime to which the plea was entered.

FREEDMAN and CLARK, JJ., concur with RENWICK, J.; TOM, J.P., and ANDRIAS, J., dissent in a separate opinion by TOM, J.P.

Judgment, Supreme Court, New York County (Edward J. McLaughlin, J.), rendered January 24, 2012, as amended on February 1, 2012 and February 28, 2012, reversed, on the law, the plea vacated, and the matter remanded for further proceedings.